Darcy Ibach, for Hanover Insurance Company, D-A-R-C-Y-I-B-A-C-H Rich Berglund, for MLK and Evergreen, R-I-C-H-B-U-R-G-L-A-N-D-A-R-C-H D-A-R-C-H-B-U-R-G-L-A-N-D-A-R-C And because you're both appellants, do you both want to reserve some rebuttal? I can either address all three issues in the opening and then just return once to then do the reply to the first two around the appellant and the response, you know, on the 155 issue. I'll do it anyway you prefer. Could you start at this? You definitely have the opportunity to reserve, but do you want to reserve anything on the one where you're the appellant? I can reserve a couple minutes, but I don't anticipate maybe saying anything at all, so we'll see. And you may not need it. So, okay. Now, you probably know this, the microphones there don't amplify, or the microphone doesn't amplify, but it does record. So, you know, be sure we're speaking into it and keep your voice up so the folks in the peanut gallery there can hear us, okay? Thanks. Okay. May it please the Court, for the Hanover Insurance Company, we are seeking an appeal on two issues that were adversely ruled against it at the lower level, and that is with regard to the... Why not, yeah, move that. Yeah, just so we want to make sure Justice Heinlein can hear it all. And that is with regard to a professional liability and also with regard to a DNL policy. This was a coverage dispute involving a putative class action complaint filed by Owens and Berry against MLK Plaza and Evergreen. Hanover issued two policies to Evergreen, and the putative class action lawsuit had four counts, all of them based on the RLTO, an ordinance protecting residential leaseholders in the city of Chicago. The first count was... Well, let me just stop you there for a second, because the RLTO on the Chicago website, it talks about, it covers the legal rights and remedies of both landlords and tenants. And it has nine things covered, and at least three of them are for the landlord. In other words, tenants' general responsibility, landlords' right of access, and landlord and tenant remedies. So, really, is the landlord a consumer under this? Not that aspect of the ordinance. The ordinance, as it relates to the duties of the landlord to the consuming residential tenants, is the consumer claims that may evolve. And so what you're looking at, the landlord rights, they aren't the consumer. But in the ordinance, because as you see, it's a balanced ordinance, it gives rights and clarifies the responsibilities and rights between the two contracting parties. In this instance, the RLTO at issue in count one was a failure to disclose financial institutions where the security deposits were placed. Count two was a failure to give a receipt to where the securities were deposited. Count three was a failure to attach the RLTO summary, and that summary then identifies the rights of the tenants. And count four was a failure to pay interest on the security deposits. So, starting with the professional liability policy, the declarations page on item six indicates that the professional line policy covers two categories, property management and consulting services. And so the issue was, does the professional liability policy respond to this four count RLTO complaint? And further within the policy and the definition section, it defines professional services as performed for a fee. So it has to be something that you're paid to do. Andre Termini, upon receipt in April 2017 at the end of the month, looked at the complaint for the professional line policy and denied coverage, and that's at the record page A270, and advised the insured that if they wanted to withdraw the claim for coverage under the professional line policy, they could, but alternatively, if they didn't by May 22nd advise as to their position on that, she would be forced to file a declaratory judgment complaint to analyze the terms of coverage. If I could just, you know, there's no doubt your position is that the insured was providing professional services, right? Correct. And the issue is whether the exclusion applied, and that's where the coverage doesn't come in. Also correct. And under the other policy, the D&O policy, the exclusion is that it's professional. It excludes professional services. In other words, the policies aren't supposed to be overlapping coverage. They're supposed to be on separate lanes of coverage. But if so, if the consumer protection exclusion, which is what the exclusion you're relying upon, if that doesn't apply, then you'd have a duty to defend, right? Under the professional line policy. Okay, thanks. So Andrea advised the insured, if you don't agree with us, please let us know and we'll file a declaratory judgment action because of the assumption. But they never filed such an action. Hanover never did. Hanover did file a cross declaratory judgment action. They did. Right, but the thing that Hanover should do is either they have a duty to defend with a reservation of right. That would be their first choice. Their second choice is to file a declaratory action. They did neither. I disagree. And let me go through the facts a little more closely. So the insured's broker had some questions. So Andrea provided a second letter explaining the coverage and why it wasn't covered with case law support. And then in the second letter, which is at A277 of the record, said please advise by June 8th whether you want to withdraw your claim or we will be forced to file a declaratory judgment complaint. On June 16th, so eight days later, the insured filed their declaratory judgment complaint. Now, in Illinois, a race to the courthouse doesn't matter. I mean, it doesn't matter who files first. The issue is now an issue as to whether there was or wasn't coverage. On July 17th, 2017, Hanover agreed to defend under both the D&O policy and the professional line policy under a reservation of right and gave its explanation for both. And you'll understand that the original complaint filed in June 16th, 2017, by Evergreen was singularly Evergreen. MLK was not a party to the coverage action, and this becomes important for other issues. So Hanover, as I said, July 17th agreed to defend under a reservation of rights and again cited Exclusion 11, which reads that the policy does not apply to claims arising out of false advertising, misrepresentation in advertising, antitrust, unfair competition, or deceptive business practices, including but not limited to  So if we were to make that finding that you would be seeking, or if the trial judge had made such a finding, that's an ultimate issue in the underlying case, whether or not there was a violation of the RTO. That's really the issue. Whether or not they failed to pay security deposits, whether or not they failed to give interest on security deposits, whether or not they failed to advise what bank the deposit was in, those are the issues. So if we were to make a finding that there was such a violation of a local witness, we'd be deciding the case. There'd be no need for a trial. I disagree again, and I'll tell you why. Then I'm going to listen. Thank you. Because we are dealing with allegations, and these are allegations that we're interested in, not the actual facts as to what happened. Whether in fact liability attaches against the insured is determinative on the actual facts. But we are dealing here with the allegations. And as you aptly pointed out, these were the allegations in the complaint, that the insured Evergreen performed all these bad acts, if you will, in violation of various components of the RLTO. So you do not have to make a finding that they indeed did each one of these items or any one of these items for coverage to be at issue. All you have to have are allegations, because recall, in a coverage analysis, you're looking at the allegations on the duty to defend, not whether in fact it occurred. So, I mean, people can make false, fraudulent, or groundless allegations all the time, and we don't prejudge whether in fact our insured did any one of these things. It's just an allegation. So ultimately, then, if after trial it's found that none of these violations occurred, then there would be a duty to defend. There should have been a duty to defend. No, that's not how it works. Because we're working with allegations, and allegations determine the duty to defend. And so you can allege somebody did something nefarious that is potentially covered under the policy, but, for instance, let's say it's a wrongful act because you didn't put the cover over a sewer pipe and a child fell in. Okay, let's say the property manager hadn't done that. That is an allegation of a wrongful act. And then we would, you know, step in and say, okay, we will defend you. Whether or not they actually did it or didn't do it or failed to put a cover over the sewer pipe doesn't matter. It's an allegation. This is no different. Here we have an allegation of an ordinance violations, and the policy, in my view, doesn't cover it because those allegations constitute unfair or deceptive practices in the consumer context involving a local ordinance. And if I may jump — Now, the trial court, just to stay on this a little bit, didn't reach the duty to indemnify, right? No. I don't believe so. I mean, I believe the court all have stated, and I have it in front of me, it says there's no claim for unfair, deceptive business practices. All the claims are under RLTO. RLTO has similarities to consumer protection statutes. It's different because it's not related to the purchase of goods or services. So I think where the court was going was they did not believe it to be a consumer protection-type ordinance, statute, et cetera, because they didn't believe it to be goods or services. And it's our view that it, in fact, is a consumer protection-type analysis because tenants are, in fact, consumers under the Carter case and the Testa case. And also, I'd like to point out a particular case that we didn't cite in our brief but I think is somewhat helpful to our analysis also. It's called Antler v. Classic Resident Management. It's a first district case. It's 315 Orratt 3rd, I think it's 299. And this case was also dealt with the RLTO. It dealt with two of the four components that are at issue in our present case. And it also had a count for consumer fraud. And in this instance, the court found that the consumer fraud case was derivative of the RLTO. And the court said that if you don't have a violation of the RLTO, you don't have a consumer fraud claim. And they said they were, in fact, deceptive by not giving the security deposit interest and not giving the RLTO summaries, which is what was at issue in this case. However, the court found that this Classic Resident Management was an extended care facility. And the court said in the RLTO, there's an exemption for these type of elder care facilities, that they're not really like the landlord-tenant type of situation that these apartment complexes are that are at issue in our case. And so they said there can't be a consumer fraud because there isn't a violation of the RLTO. But the court was not at all troubled to find that it's deceptive not to give the interest when you are supposed to under the RLTO. The court found that not giving the RLTO summary is by itself deceptive. And recall, we're looking at basically two types of things. Is it unfair or is it deceptive? And we believe that it is both unfair and deceptive. And it is unfair because if you aren't giving the interest to a tenant that is otherwise entitled to the interest, of course, again, it's just an allegation. But if you're not, that is unfair to the consumers. And how do we know it oppresses a group of people? This is a putative class action because allegedly it involves all of the different consumers that are renting from this evergreen group. And we don't spend a lot of time on it, but it's a breach of a statute, almost like a breach of contract, not to pay the interest. And that's deceptive? Well, it's deceptive because you didn't give them the summary sheet that told them they weren't entitled to it. That's a different issue, though. I get that. I get that. And it sort of flows from that because it's unfair not to give it to them. Because remember, for a piece of... Well, it's always unfair to breach a contract. I'll give you that, too, and breach a statute. But the deceptive part, I'm just having trouble with. Well, I think that perhaps you're right. Maybe all of the deception flows initially from not giving the summary because the summary identifies all the rights the tenant has. So once the tenant... And, you know, let's face it, most of these tenants aren't going to be schooled in the RLTO, so they're not going to necessarily know all the rights they are entitled to. So if they don't know they're entitled to know where their money is supposed to be deposited, that they are supposed to get interest on it, you know, they're losing out on something that they're otherwise entitled to know and to have. And that's why the ordinance was put into effect. It was to protect the consumer, tenants, and the city of Chicago. And Hanover could have included exclusions for violations of local housing ordinances, and that would have made this a lot easier case, wouldn't it? Say that again, sir? Hanover could have included exclusions for violations of local housing ordinances, and they didn't do that. They did not do... So that would make it a lot clearer. Because here there's an ambiguity, but it's a little ambiguous. I disagree, and let me give you an example of two cases. Hanover has litigated this particular Exclusion 11 twice before successfully. Once in the New Jersey District Court with Retro Fitness. Retro Fitness had four different statutes at issue. One was how they collect fees for cancellation of health club memberships, and then the New Jersey Consumer Fraud Act, and then some title warranty. So the issue becomes, how is this what is labeled by Hanover as the miscellaneous professional liability policy? It is sold to various entities in various lines of professional lines. But what it's seeking to do is to excise from coverage things that fall generally within the consumer protection arena for false and deceptive-type practices in whatever local, federal, or state, however they are manifested. And that's why the New Jersey District Court had no problem finding that their four strictly New Jersey statutes were within the scope of Exclusion 11. Similarly, the Western District of Wisconsin in 2019 had a case involving a property manager that was managing a college in Illinois, and they were selling it to some bondholders, and they had to disclose certain information. The bondholders filed an SEC complaint to New Jersey feeling that the law was perhaps more favorable than Illinois or Wisconsin where you'd think there would be personal jurisdiction. Nevertheless, it went through New Jersey, Hanover filed a declaratory judgment action in Wisconsin where BMOC, the property manager insured, is incorporated, and the court, again, had no problem finding the property manager's exclusions for SEC violations and for Exclusion 11 easily fall within the 21-count complaint that was pending in that action because, again, they were consumer-type protection statutory-type claims that were being asserted. So what you find is you're not going to have in each instance a policy that's going to identify each particular state, statute, local ordinance that's applicable. Yeah, but this case is a little different because they knew what kind of company that Evergreen was, and they knew what they were going to be insuring. So it seems like it would be logical to say that to include violations of local housing ordinances because they knew what kind of company Evergreen was. I think that this exclusion is clear and unambiguous, which was directly stated by the Wisconsin Jurisdiction. Yes, whether or not it is clear. But you have the burden, right? On an exclusion, Hanover has the burden of proof that is correct. And it's got to be free from doubt, and doubts as to coverage will be resolved in favor of the insured. Oh, and that law. Because I don't know what the law is in those other states, but that's the Illinois law, right? It's essentially to say New Jersey is a very insured-friendly state, so when they file for the insurer, Wisconsin is known to be a very insured-friendly. I think Illinois is not considered to be quite as insured-friendly as the other two. So when you can win in Wisconsin and in New Jersey, you know, and they put in their opinion, both instances, it was clear and free from doubt. I think I have a quote that I could read. You chose to start with the professional liability policy. We don't want you to lose time and not get to your own policy. Yes, okay, certainly. All right. So we've talked about the Adler case. We've talked about that it's, at least in our view, free from any ambiguity that we've got that. And then we also have the professional, the D&L policy. The D&L policy, the court found in favor of a defense obligation saying there may be some ministerial or administrative issues here. And I think that sort of misses the point, because we have direct language that refers to in any way related to. And what was interesting is that the appellate courts of Illinois have noticed that in the Pekin v. Shaw case, that if it's tied to what the entity is doing, then it is, in fact, somewhat related to and incidental to the professional services and therefore excluded by the professional services exclusion. Similarly, in the Kilfoy case, it was a LASIK, and we were trying to find out whether the doctors were qualified to work at the LASIK entity. And the court said this is related. And I think the case that really probably ties it all together is the Roseland case, because the Roseland case explains how come Enright comes out one way and Kilfoy comes out the other way. And the court says in Enright, which is a case that Evergreen cites, is they are doing criminal background checks. So that's really the safety of the environment for the employees and perhaps the public that goes into that facility. Whereas in Kilfoy, they were looking, is the doctor qualified? And so Roseland says we're looking to see whether it's tied to the professional service that is actually being performed, not if you're generally not a dangerous individual perhaps, and that's why we're doing criminal background checks. So in this instance, all four of these counts, and there's the only counts, there's no common law claims here, they all are tied to the handling of the property management services. So we take the view that they are definitely in any way related to. So if a landlord, we'll just call him John Doe, were doing these same services because John Doe owns property, is he engaging in professional services? You said John Doe owns property? John Doe owns property. Okay, so we have property management, not owners. So that's actually a very important distinction you're bringing up because MLK is the owner of the property. And in our limited additional insured endorsement, we identified maybe six or seven entities that are qualified as a limited additional insured. And then we also have a kind of catch-all phrase, and this is under your professional line policy. And then it says if you're a third party and there's a contract and you're also sued for property management, we will provide you vicarious liability insurance for that. And that's why MLK, they weren't in the original complaint. MLK did not give notice and request any defense, and it was only in January 15, 2018, that they said, oh, I want a defense too. And eight days later, Hanover said, okay, fine. But they're not named in our policy, and we weren't approving to the contract between the owner and the property manager until the discovery of the case. And I think it's also critical to recognize that if MLK had wanted a defense, they should have given a notice, and they could have been a party to the original declaratory judgment action filed by Evergreen, and they were not. And there's a number of cases we cited which showed that if you're an additional insured and no longer named as an omnibus insured in your policy, you need to prove to us that you want coverage because we're not going to know without it, and then there's certain steps you have to take. I think you're out of time. Oh, I apologize. Yeah, but we'll give you a couple more minutes for rebuttal. Okay, thank you, Your Honor. Thank you. Good afternoon. Good afternoon. Hey, police and court. My name is Rich Berg. I'm here for MLK and Evergreen counsel. Justice Walker, you, I think, hit the nail right on the head with respect to the PL policy specifically. You asked why there wasn't a particular exclusion in the policy, which provided that a violation of a local housing ordinance was excluded. Hanover is a very sophisticated insurance company who easily could have done that. The reason why they likely didn't do that is because they don't want to be selling a policy that looks like it's not going to provide coverage to a property management company for potentially negligently violating a local housing ordinance. Rather, what they'd like to do is when the claim comes in, in this case, repeatedly deny coverage, and then after the insurer has filed a complaint for declaratory judgment a month later, reverse course and accept and defend under a reservation of rights, still choosing not to file a counterclaim for declaratory judgment, but rather merely filing an answer and denying the fact that they have a duty to defend. Fast forward nine months, and you have finally a counterclaim for declaratory judgment on file. As Justice Griffin, you pointed out, when it comes to the duty to defend, you're looking at the allegations of the complaint, and you're also, when it comes to looking at an exclusion, you have to interpret the exclusion narrowly. If there's any doubts, you have to resolve it in favor of coverage. Doesn't the RLTO, though, have all of the hallmarks of a consumer protection statute? The attorneys' fees and all of the other things that are covered by it. Does it have all of the hallmarks? No, I would disagree. As you yourself pointed out at the beginning of this, it also provides protections for landlords. It gives rights to landlords in addition to tenants. So I would not call this, by any means, a true consumer protection statute or law where it has protections provided for, in this case, landlords who, as Ms. Agarwal has admitted here, are not consumers. So if there are mutual protections, you're saying it couldn't qualify as a consumer? I don't think it's clear and unequivocal that there's no doubt. Maybe that is a reasonable interpretation, but I believe that our interpretation that it is not a consumer protection statute is equally reasonable. And as you know, where there are two equally reasonable interpretations of policy language, the doubt is resolved in favor of coverage and in favor of the insured, which is exactly what we have here. Now, with respect to the allegations of the RLTO underlying punitive class action themselves, I'd like to start with the entity liability policy, which I like to call it. I know there's some discrepancy about whether it's a D&O or an entity liability. I believe that it's properly called an entity liability policy because that's what they call it. Hanover calls it in the insurance contract itself. Hanover, in my opinion, is all over the place with respect to the coverage under the EL policy. They say that all the complaint alleges is professional services. And then in the Reservation of Rights Letter, July 31, 2017, they say it's possible that Evergreen was acting as a landlord, and as a result, we reserve our right to say there's no coverage under the professional liability policy because there's no professional services that were provided. You can't say both. You can't say there's a possibility that there's no professional services and then say coverage in its entirety is excluded because there's only allegations of professional services. The two things just, they can't intertwine. They can't overlap. And I also find it interesting that Hanover asserts that these two policies are intended to provide overlapping coverage, but that's exactly what they're doing now. They've reserved their rights under both policies. So, in effect, they are providing, currently they're providing overlapping coverage. So that was interesting as well. But if you're looking at the allegations, that's where you should start with the underlying complaint. Nothing in the underlying complaint confirms that Evergreen was only providing professional services. The allegations are that Evergreen was an owner, agent, lessor, sub-lessor, successor of interest to any. So as Hanover itself has admitted, those allegations create the possibility that Evergreen was not providing professional services. And those are just the allegations of the complaint, which is why, with respect to the E.L. policy, Hanover seeks to introduce extrinsic evidence for the court to consider. I think what's different, though, here is that Hanover has a provision that's different from those that have been interpreted by some of the cases that you rely on, in that it provides that, it refers to acts in any way related to the performing of professional services or rendering professional services. So I think that distinguishes this policy from some of the cases that you're relying on. If the language is different in the Hanover policy, then it is distinguishable. However, the court cannot, when it is looking at an exclusion, provide the broadest possible applicability of that exclusion. It has to look at the exclusion. And that's what they're arguing, exactly. They're arguing that their language is more broad. On both of them, they're arguing that their language is incredibly broad and you should read these exclusions in the broadest possible way, which is not what courts in Illinois do. They look at these exclusions under a lens and they figure out, they don't say, okay, how can we apply this as broadly as humanly possible? They look at it and say, we need to apply this narrowly. We need to look at the language and construe it liberally in favor of coverage. I believe that when you do that here, there is a possibility of coverage because some of the violations could result from administrative or ministerial acts of negligence that are completely and utterly unrelated to the provision of professional services. And specifically, I would refer the court to count three, which is a failure to attach the RLTO summary. This is often referred to as a failure to give, which is not correct. It's a failure to attach. A failure to attach isn't the same as failing to give. You can give the lease and the summary to the tenant at the same time, and if they're not attached, that's a violation. So it's entirely possible that based on the allegations of the underlying complaint, that that's what happened. And so our argument would be in a situation like that, or for example, they mail the correct amount of security deposit interest to the tenant and it gets lost in the mail. Is that a professional service? Does that sound in professional negligence? I don't think so. Yeah, but their argument is that it's based upon the claim allegation rather than ultimate facts. You seem to be speaking of ultimate facts. Correct. That's what counsel just argued. I agree. And if their allegations are or if their contentions are, you have to look solely at the allegations of the underlying complaint. That's exactly what they're saying. Okay. Well, the allegations of the underlying complaint say that Evergreen is the owner. So Evergreen is potentially an owner according to the allegations of the underlying complaint. Not an agent. Not a property management agent. It's an owner of the property. As you pointed out earlier, if you're John Doe and you own the property, is that a professional service? No. So you're looking at the underlying complaint, literally construing it, looking at every single possibility out there based on those allegations. And those allegations create the possibility that Evergreen is the owner. And has the owner violated the RLTO? There's a duty to defend. Which is why they resort to extrinsic evidence to prove the applicability of their exclusion. Also, which is why we argue in our briefs that you should look at the Reservation of Rights Letter dated July 31, 2017, where they admit that there's a possibility that the underlying complaint does not erode professional services. Because they want to be able to pull the rug out from the professional liability policy if, indeed, Evergreen was the landlord. Because they're going to say, oh, in that situation, yeah, there's no professional service. And this professional liability policy only provides coverage for errors and omissions in your professional service. So that's why they did that. But I think in doing that, they didn't realize the effect that it was going to have on coverage under the ER policy. So I think that that was maybe a miscue on their part in making that admission. Now, on the Section 155 issue, they're arguing that the standard of review should be an abuse of discretion. And I believe you're arguing that it should be a de novo review. Did you want to respond to that? Yeah, our argument would be that it should be a de novo review because it came from the class motions for summary judgment that were filed by both parties. And Hanover itself asked for judgment as a matter of law with respect to Section 155. And as you can see from the trial court's oral ruling, there was no bench trial. There were no real factual issues that were presented to the court. The court didn't dive into it, make any factual determinations. The court granted Hanover's motion for summary judgment, which asked for judgment as a matter of law. So that's our argument. I know that there's case law going the other way, and Hanover has cited that and agrees that it is an abuse of discretion. But it would be our position that it is a de novo review, for your honors, because you would be looking at exactly the same materials that the circuit court looked at. It wasn't like somebody came in and provided testimony or the judge made any sort of credibility determinations. She just looked at the papers that were before her and made the determination that she was going to grant Hanover's motion for summary judgment, which asked for judgment as a matter of law. So that, I believe, enables your honors to take a fresh look at this issued de novo as a matter of law. And I also believe that when the justices were to do that in this case, they would find that Hanover is all over the place and essentially forced Evergreen here to file a complaint for declaratory judgment. And only after they filed a complaint for declaratory judgment did Hanover pick up the defense subject to a reservation of rights. Nowhere in their pleadings, nowhere in their motion papers, there's no affidavit saying, yeah, you know, we had a complaint for declaratory judgment ready to go and we were going to file it, but we didn't. All they can point to in the record are the letters from Andrea Termini that say, we will file a complaint for declaratory judgment, but they never did. What's your position and where are we with the duty to indemnify? The duty to indemnify, Hanover filed it. We filed a complaint for declaratory judgment, Evergreen. I'm seeing a judgment there's a duty to defend. Hanover filed a counterclaim for declaratory judgment seeking a declaration of no duty to defend, no duty to indemnify. My position is that the duty to indemnify is not right until there's some sort of liability in the underlying action. Their position is going to be, if there's no duty to defend, then there's no duty to indemnify. Which they're right. Right. Okay. That's my position. Right. But the trial court found that there was a duty to defend. That's correct. So I'm just wondering where we are as we stand right now with the trial court's ruling. See, there's some things in the record and some things in the briefs it'll mention defend and indemnify. But I don't think there has been any discussion or finding on the duty to indemnify at this point. That's correct. Okay. And there would have been had the circuit court ruled in favor of Hanover. Because if there was no duty to defend, then there is no duty to indemnify. Right. Okay. Do you have anything else on the 155, by the way? Just a simple fact of, you know, they did raise the issue of that there's a bona fide dispute as to coverage and that that's an ultimate defense to a 155 claim. I understand that there's a case out there that supports their position. But my argument would be that that's not a carte blanche. It doesn't give them the ability to do whatever they want to do if there's a bona fide dispute. And, in fact, the facts show that they didn't think there was a bona fide dispute. They felt there was absolutely no coverage. They issued multiple declarations of coverage letters saying there's no coverage, there's no possibility of coverage, we're relying on these exclusions, which should be construed narrowly and liberally in favor of coverage, so we're going to continue to deny coverage. And I believe that their conduct was vexatious and unreasonable. And who's to say that if we never filed a complaint for declaratory judgment, they would have? I mean, you don't want to encourage insurance companies to just wait and see what happens to file a couple of declaration letters when they knew that there was a potential for coverage. That's one of their arguments, though, is that they have actually three choices. Their argument is that they have two choices. They either defend or they file a debt capture. Their argument is that they have a third choice, and that is to assume the risk. They don't have a third choice. Well, they do. Absolutely, right. That's their argument. Right. But when, as here, there's a duty to defend and there's a potential for coverage on the face of the underlying complaint, they have to, as you pointed out, either defend under a reservation of rights or file a complaint for declaratory judgment. They didn't either, so I guess they chose number three. They assumed the risk, and now they should be stuck with it. Okay. Do you have anything else? I do not, Your Honor. Do you have anything else? Okay. Thank you. Thank you. If you have some response, particularly on 155, we'll give you another chance after counsel. Just a few minutes is all I would need. Thanks. Thank you. Can you respond to the standard of review issue? The standard of review? The 155 issue. Yes. Because you're arguing that it's a piece of discretion. A piece of discretion, yes. We cited three cases that were all on summary judgment and were all instances where the court did, in fact, find or had a duty to defend, but likewise, as was done in the underlying case here, found that there wasn't a Section 155 violation. And so the court looked at the record and determined there was no vexatious and an unreasonable position. And I would like to point out it would be news to Hanover that the sums of money they paid Pretzel and Stouffer to defend the case that they didn't do because it's a falsehood to say they haven't been defending. They've been paying bills. They've been defending. And it's also a falsehood to say that they haven't been in a deck suit. They had been in a deck suit, and they also filed a counterclaim. And the Illinois court in the Cordy Construction v. American State Insurance Company as well as the Sears Roebuck v. Seneca Insurance Company cases say Illinois courts do not contemplate a race to the courthouse to file a declaratory judgment action. An insured cannot invoke equitable estoppel merely by filing the declaratory action before the insurer. It is rank speculation that Hanover did not have ready to go a complaint for declaratory judgment action. It gave the insured until June 20th to let them know if they were going to withdraw the complaint. And within eight days, our opposing counsel filed a declaratory judgment complaint. Again, how Illinois views this is what is the stage of the underlying litigation. It was at the infancy stage. Courts have found in Illinois that six months, nine months, 12 months is not too late to file a declaratory judgment action. So to state that there was this gross violation of insurance practice by not having beaten them to the courthouse to file the declaratory judgment action is not in keeping with Illinois law. Secondly, in terms of why was the professional services potentially reserved upon in the Reservation of Rights Letter of July? Recall that July letter came after the declaratory judgment action was already pending. Why is that important? It's important because of the very reasons Your Honor has stated and Mr. Berglund has stated, and that is because the complaint has the litany definition that is set forth in the RLTO. How that is defined is exactly how the ordinance is defined. Owner lesser, sub-lesser, et cetera. Our policy, as I explained earlier, does not cover owners unless it's owners that has a contract with a property manager and then only in their vicarious liability. To the extent the owner is tagged for vicarious liability of the property manager, the policy would respond. So it is an unfair statement to say, oh, well, they reserved on property, you know, professional services. Well, of course, because we don't cover owners. And so if the complaint allegations include owners, that is an uncovered potential professional service. And so, therefore, it is not counterintuitive to reserve rights on that. Also, one must recognize the definition of a professional service is different in the D&O policy than it is in the professional liability policy. The professional liability policy requires it to be for a fee. The D&O policy said it doesn't have to be for a fee. The professional services policy only defines a professional service as is set forth in item six of the declarations page of that policy, which says property management or consulting services. There's a myriad of professional services out there, practicing law, being a doctor, engineer, whatever, that are not professional services under that particular professional services policy. However, under the D&O policy, professional services is not defined. It can be a doctor. It can be a lawyer. It can be an engineer. And so, therefore, what you have are an accountant or whoever gets a professional. So what you have are apples and oranges in terms of what is a professional service. So I think a lot has been attempted to be made out of thin air, that somehow reserving rights on the professional services in the reservation of rights letter somehow is, you know, you can't reserve rights on it. Are you alleged to be an owner? It's not an estoppel on the issue. Right. It's just not an estoppel. And remember also under Elko, the Illinois Supreme Court case, there has to be detrimental reliance. How can there be detrimental reliance when there's already a dex suit? Now you're bringing it up. You know, that statement is made after the declaratory judgment action has been filed. You know, again, it doesn't make sense. And so under the brochure case, which has a nice description of what waiver and estoppel is, it doesn't fit. So I think what we have here is, and in terms of the extrinsic evidence, the courts have been clear. When you're looking at does the person qualify as an insured and is it professional services, and we cited cases to that effect, you can look at extrinsic evidence. Again, we are stating you don't have to look at the extrinsic evidence if you feel it's inappropriate. The courts have allowed that extrinsic evidence when you're trying to determine a duty to defend. We've cited three cases. They've cited no cases that say you cannot look at that other than the Pepper's Doctrine, which is if it goes to an ultimate fact. Again, we don't, you know, on behalf of the insured, of course, we care whether they actually did something wrong. But in terms of looking at the coverage, it doesn't matter whether they did or didn't. All that matters is the role they had. And our evergreen had the role of the property manager. And how do we know that? They filed in September a motion to dismiss where they put in there they were a property manager and MLK Plaza was the owner of the property as of December 24, 2014. So we know what roles they had. We know what capacity they have. And that is what's important for determining are you an insured and are you doing a professional service. Obviously MLK is not doing a professional service as the owner, so our insurance policy would provide insurance to them if they were held vicariously liable for the evergreen, you know, mishaps, if you will, for property management. And again, we don't cover consumer-related claims, whether they be local ordinances, as in the RLTO. It goes to the heart of what is being done. They're talking about whether you sent it or you give it as opposed to you attach it. So apparently the argument they're making now is like there's a difference whether you staple it or hand it to them next to it. Perhaps there's case law that discusses it. I really don't know the difference. But I do know that the allegation is violations of an RLTO that are related to the professional property management. The RLTO is geared towards landlord property managers. It's how you conduct your business. And so, therefore, it is akin to ‑‑ I'm sorry, am I out of time? Yeah, you are out of time. Sorry, I apologize. Did you have anything you wanted to say on the 155? The 155 I think is clear. There's a bona fide dispute as to coverage. I think the trial court got it correctly. And it's, you know, abuse of discretion review based upon the case law. And I don't believe the court abused its discretion. So at this time we would like to have reversal on the findings of duty to defend under the professional lines and the DNL policy and affirmance of the section 155 finding. Thanks very much. Thank you. Did you have anything you wanted to add on the 155 basically? No, I'm not sure I have anything. Did you have anything else? No, I did. Okay. Well, thank you very much. I appreciate it. The briefing was very good. The arguments were very good and illuminating. And we'll be taking this under advisement. And like I said, Justice Hyman will listen to the oral arguments. So thanks very much. Thank you.